# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

_____

MARKET STREET SECURITIES, INC.,

               Plaintiff,

     v.

MIDWEST AIR GROUP, INC.,
TIMOTHY E. HOEKSEMA,
FREDERICK P. STRATTON, JR.,                   Case No. 07-CV-345
SAMUEL K. SKINNER,
JOHN F. BERGSTROM,
DAVID H. TREITEL,
RICHARD H. SONNENTAG,
ULICE PAYNE, JR.,
JAMES R. BORIS, and
ELIZABETH T. SOLBERG,

               Defendants.

_____

## ORDER

On April 12, 2007, plaintiff filed a complaint against Midwest Air Group, Inc. ("Midwest"), and its board of directors, seeking various forms of injunctive relief as well as damages if appropriate. (Docket #1). Subsequent events led to the mooting of plaintiff's claims, thus the action was dismissed without prejudice on November 27, 2007. (Docket #38). On October 6, 2008, plaintiff filed a Motion for Attorney Fees and Litigation Costs and Expenses pursuant to Fed R. Civ. P. 54(d)2. (Docket #38). Jurisdiction over the original action, as well as jurisdiction over the motion for attorneys fees, is premised on 28 U.S.C. § 1332, as there is complete diversity

between the parties,[1] and the amount in controversy is in excess of $75,000. The court, having fully considered the parties' briefs and applicable law, finds that plaintiff's motion must be denied.

## BACKGROUND

On October 20, 2006, AirTran Holdings, Inc. ("AirTran") offered to acquire all outstanding shares of Midwest stock in exchange for cash and AirTran stock, collectively valued at $11.25 per share of Midwest stock. (Pl. Br. Supp. Mot. Atty's Fees at 2). Midwest's board did not disclose the offer to its shareholders, despite the premium presented. (Id.). AirTran, thereafter, offered to enter into discussions with Midwest regarding possible ways to combine the two businesses. (Id. at 2-3). However, Midwest announced on January 10, 2007, that it intended to remain a stand-alone company. (Id. at 3).

In the ensuing months, AirTran continued to court Midwest, offering increasingly more per share with each proposal. (Id. at 3-8). Midwest continued to rebuff AirTran's offers. (Id.). Thus, plaintiff, as a Midwest shareholder, brought suit in this court, on behalf of itself and others similarly situated, seeking "injunctive relief to require [Midwest's] [b]oard to fulfill its fiduciary duties to the stockholders by compelling it, among other things, to adequately consider the pending proposal from

_____

[1] Midwest has faulted plaintiff for not properly alleging diversity jurisdiction, as plaintiff has alleged that its principal place of business is in Pennsylvania, but has not made any allegation as to where it is incorporated. Midwest is, of course, correct. Plaintiff is a citizen not only of the state in which its principal place of business resides, but also is a citizen of the state in which it is incorporated. *See* 28 U.S.C. § 1332(c)(1). However, in order to resolve plaintiff's motion on its merits, without further briefing, the court has consulted the Pennsylvania Department of State online database and confirmed that plaintiff is a corporation and is incorporated under the laws of Pennsylvania.

Case 2:07-cv-00345-JPS   Filed 09/15/09   Page 2 of 22   Document 50

AirTran, engage in good-faith negotiations with AirTran regarding possible terms for a combination, and take all necessary steps to maximize short-term and long-term shareholder value." (Compl. at 1-2). As plaintiff's case moved forward in the court, outside pressure from Midwest's shareholders appeared to be mounting for Midwest to consider AirTran's offer. (Pl. Br. Supp. Mot. Atty's Fees at 10-13). On June 14, 2007, Midwest announced that at its annual meeting its stockholders had voted to remove three incumbent directors, and replace them with directors nominated by AirTran. (Id. at 13).

On June 26, 2007, Midwest announced that it would allow AirTran to conduct a presentation to Midwest's employees regarding AirTran's offer; however, Midwest maintained that AirTran's offer was inadequate and did not reflect Midwest's long-term value. (Id. at 14). At the end of July, Midwest announced that it was forming a committee to review strategic alternatives, including AirTran's offer. (Id. at 15-16). On August 16, 2007, Midwest announced that it had signed a merger agreement to be acquired by an affiliate of private equity firm TPG Capital, L.P. ("TPG"). (Id. at 16). Under the terms of the proposed agreement, each share of Midwest stock would be converted into the right to receive $17.00 cash per share, which was a higher price than that of any of AirTran's offers. (Id.). On October 20, 2007, it was announced that Midwest shareholders voted to approve TPG's offer. (Id. at 17). Accordingly, plaintiff's claims were mooted, and the court dismissed the action in the instant case on November 27, 2007. (Id.).

## APPLICABLE LAW

On October 6, 2008, nearly a year after plaintiff's complaint was dismissed, plaintiff filed its motion seeking $163,954.00 in attorney's fees, and $9,325.81 in costs, arguing that its legal efforts contributed to Midwest's decision to entertain buyout offers, which led to Midwest shareholders receiving more for their shares than the shares were otherwise worth at the time. Thus, plaintiff argues that because all Midwest shareholders shared in the benefits from plaintiff's actions, they should also share in the expense under the "common fund" doctrine.

The common fund doctrine is an exception to the American rule of attorney's fees. *Recent Case, Attorneys' Fees – Substantial Benefit Doctrine – Delaware Supreme Court Grants Fees to Plaintiff Suing as an Individual Shareholder – Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989), 103 HARV. L. REV. 1187, 1187 (1990). The American rule requires each side in a lawsuit to pay the full cost of its own legal representation. Id. The common fund doctrine, however, holds that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). By allowing recovery of attorney's fees from the common fund, the doctrine ensures that all those who share in the benefit (i.e., the prospective fund recipients) also share in the costs that plaintiff incurred in recovering the fund. It is the court's jurisdiction over the fund involved in the litigation, as well as the court's historic equity jurisdiction,

-4-

that empower it to assess fees against the fund, so as to prevent the unjust enrichment which would otherwise occur. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164-165 (1939); *see also Van Gemert*, 444 U.S. at 478.

An extension of the common fund exception is the "common benefit" doctrine.[2] The common benefit doctrine recognizes that attorneys fees should be shared by those who receive a common benefit arising from a suit, even if that benefit is not a monetary fund from which the fees can be extracted before the funds are disbursed to the recipients. The typical situation is a shareholder derivative suit in which "the successful shareholder plaintiff confers a substantial benefit on all of the shareholders of the defendant corporation." *Johnson v. U.S. Dep't of HUD*, 939 F.2d 586, 590 (8th Cir. 1991). Thus, "any fees assessed against the corporation can be spread proportionately among all of the shareholders, who are the real beneficiaries of the litigation, because the corporation is the alter ego of the shareholders." *Id.*

While acceptance of the common fund doctrine is rather ubiquitous, the extent to which it has been applied varies by jurisdiction. *See* Robert L. Rossi, Annotation, *Allowance of Fees out of Fund*, 1 Attorney's Fees § 7:1 (3d ed. 2009). The standard plaintiff would have this court apply is that espoused by the courts of Delaware, which hold that attorneys fees can be granted in a mooted case if: 1) the action was meritorious when filed; 2) action producing benefit to the corporation was taken

---

[2] Some courts refer to this as the "substantial benefit" doctrine. However, it seems more appropo to refer to it as the "common benefit" doctrine, as it is the commonality of the benefit conferred which justifies the award of attorneys fees, rather than it being the substantiality of the benefit that justifies such award.

Case 2:07-cv-00345-JPS   Filed 09/15/09   Page 5 of 22   Document 50

before a judicial resolution; and 3) the resulting corporate benefit was causally related to the lawsuit. *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980). Further, "[Delaware] courts 'recognize a presumption that there is a causal relationship between the benefit and a timely filed suit.'" *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011, 1015 (Del. 2007) (quoting *In re Infinity Broadcasting Corp. Shareholders Litigation*, 802 A.2d 285, 290 (Del. 2002)). "To overcome this presumption, defendants have the burden of 'demonstrating that the lawsuit did not in any way cause their action.'" *Alaska Elec. Pension Fund*, 941 A.2d at 1015 (quoting *Allied Artists*, 413 A.2d at 880). Plaintiff asserts that this court should adopt the Delaware standard based on the argument that "[n]o court in the nation has a more developed body of shareholder and corporate law than Delaware." (Pl. Reply Br. Supp. Mot. Atty's Fees at 12).

Midwest, however, states that "[t]here is no question that plaintiff's application for fees is governed by Wisconsin law." Though Midwest cites no basis for this axiom, the court, through its own research, has determined that Wisconsin law should apply. The fact that the common fund doctrine stems from the court's inherent equitable powers might suggest that the issue is not governed by state law. *See Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir.1981) ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision."); *see also Clark Equipment Co. v. Armstrong Equipment Co.*, 431 F.2d 54 (5th Cir. 1970) ("Neither

-6-

the Federal Rules of Civil Procedure nor the Erie doctrine deprive Federal courts in diversity cases of the power to enforce State-created substantive rights by well-recognized equitable remedies even though such remedy might not be available in the courts of the State."). Neither party has addressed this issue.[3] However, the court has satisfied itself, based on applicable case law, that "[i]n diversity cases, state law governs the granting of attorney's fees." *Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir. 1987) (citing *Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 259 n. 31 (1975)); *see also Neyhard v. State Farm Mutual Auto Ins. Co.*, 1986 WL 9601, 2 (E.D. Pa. 1986) ("Plaintiff's reliance on this courts' equitable powers to award attorney's fees under a common fund theory is misplaced in this diversity case. In a diversity case, a federal court must look to state law on attorney's fees); *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) ("If the plaintiff's relief derives from a state law cause of action, any entitlement to attorney's fees must also derive from state law.")

Wisconsin law regarding the common fund doctrine is not nearly as favorable to plaintiff's position as is Delaware law. Wisconsin law neither adopts the causation presumption against defendants found in Delaware law, nor does it appear to even adopt the common benefit doctrine. Rather, it appears confined to cases truly

---

[3]It may well be that the question is purely academic, as Wisconsin state law governing the common fund doctrine simply adopts well established U.S. Supreme Court precedent governing the issue. Since there is no Seventh Circuit or U.S. Supreme Court case law adopting the Delaware standard, it would seem that the issue of applicable law would perhaps only matter if the court thought it equitable to employ the Delaware standard, yet felt constrained not to by Wisconsin law. Such is not the case, as the court does not consider imposition of the Delaware standard to be equitable.

-7-

involving a common fund. The standard under Wisconsin law is that in order for a court to adopt the common fund approach: 1) "those benefitting from the litigation should be small in number and easily identifiable"; 2) "the benefits should be traceable with some accuracy"; and 3) "the attorney fees should be capable of being 'shifted with some exactitude to those benefitting.'" *Wis. Ret. Teachers Ass'n, Inc. v. Employee Trust Funds Bd.*, 558 N.W.2d 83, 98 (Wis. 1997) (quoting *Alyeska*, 421 U.S. at 265, n. 39).

## ANALYSIS

Plaintiff argues that the common fund that it helped create consists of the difference between the price of Midwest stock at the time plaintiff filed suit, $14.62 per share, and the price ultimately paid to shareholders, $17.00 per share. (Pl. Br. Supp. Mot. Atty's Fees at 18). This per share price differential, when multiplied by the number of shares outstanding at the time, represents a fund, according to plaintiff, consisting of an additional $58 million conferred on Midwest shareholders. (Id.). Because the entirety of that $58 million has already been paid out to the individuals who were shareholders at the time of the buyout, and because those individuals are not a party to this suit (thus the court has no jurisdiction over this alleged fund) plaintiff maintains that attorney's fees should be assessed against the corporate entity of Midwest, as an alter ego of the shareholders.

Midwest attacks plaintiff's assertions on numerous grounds. Midwest states that according to Fed. R. Civ. P. 54, plaintiff's motion is untimely. (Def's Resp. Br.

Case 2:07-cv-00345-JPS   Filed 09/15/09   Page 8 of 22   Document 50

Opp. Mot. Atty's Fees at 5). Rule 54 states: "[u]nless a statute or a court order provides otherwise, [a] motion [for attorneys' fees] must . . . be filed no later than 14 days after the entry of judgment . . . ." Fed. R. Civ. P. 54(d)(2)(B)(I). Plaintiff, however, points out that the term "judgment" includes "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). As this case was dismissed without prejudice, no "judgement" was ever entered, thus the 14-day deadline was never triggered. *Castro County, Tex. v. Crespin*, 101 F.3d 121, 128 (D.C. Cir. 1996) (holding that a dismissal without prejudice does not trigger the Rule 54(d)(2)(B)'s 14-day filing requirement); *Pavlovich v. Nat'l City Bank*, 461 F.3d 832, 836 (6th Cir. 2006) (same). Undoubtedly, it is problematic that, based on the foregoing, it would appear that there is no deadline by which plaintiff was required to file its motion for attorney's fees. Certainly this cannot be the case. However, Midwest has not demonstrated what deadline should apply. Furthermore, given the court's ultimate ruling, the point is moot.

Midwest's next contention is that the common fund doctrine does not authorize recovery in the instant situation. (Def.'s Resp. Br. Opp. Mot. Atty's Fees at 7). There are several bases for this contention. First, Midwest suggests that there is no fund over which the court has control. Such a fund is a defining feature of the common fund doctrine in its purest form. Indeed, each of the Wisconsin common fund cases of which this court is aware is characterized by an actual fund over which the court has control. *See Wis. Ret. Teachers Ass'n,* 558 N.W.2d at 97-98 (describing the

Case 2:07-cv-00345-JPS    Filed 09/15/09    Page 9 of 22    Document 50

fund created by the litigation); *Milwaukee Police Ass'n*, 588 N.W.2d 636, 640-41 (Wis. App. 1998) (describing retirement fund that was preserved by litigation). However, the instant case is not a true common fund case; it is more similar to a common benefit case. *See Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 522 (1st Cir. 1991) (describing an action that produces "an increased price per share (which enriches the class even though the emolument is not paid into a kitty but goes directly to the shareholders)" as "not a common fund but a common benefit."). There is no basis for this court to assume that the Wisconsin Supreme Court is willing to extend the common fund exception to include the common benefit exception as well. Additionally, there is no basis for this court to assume that the Wisconsin Supreme Court would be willing to adopt the liberal Delaware standard, along with its causation presumption, for which plaintiff advocates. *See generally Beloit Liquidating Trust v. Grade*, 2004 WI 39, ¶ 24, 677 N.W.2d 298, ¶ 24 (holding that application of Delaware law to a company incorporated in Delaware but headquartered in Wisconsin would constitute officious intermeddling.[4]

It is doubtful that plaintiff, even if able to show causation, would be able to recover under the common fund doctrine because, as previously stated, there is no

---

[4] Unlike the corporation in *Beloit Liquidating Trust*, Midwest is both incorporated and headquartered in Wisconsin, further underscoring the inappropriateness of applying Delaware law.

Case 2:07-cv-00345-JPS   Filed 09/15/09   Page 10 of 22   Document 50

common fund over which this court has authority to order attorney's fees deducted.[5] At best, it could be said (if causation were shown) that plaintiff's efforts created a common benefit; however, as previously stated, there is no indication that Wisconsin has adopted the common benefit exception. Yet, even if the court employs the common benefit doctrine – or, if the court be mistaken in categorizing the instant case as being a common benefit type case rather than a common fund type case[6] – plaintiff still would not be able to recover attorney's fees for two important reasons: 1) assessing attorney's fees against Midwest would not constitute fee spreading among beneficiaries, but would rather constitute impermissible fee shifting; and 2) plaintiff cannot show causation absent the inapplicable Delaware causation presumption.

**1)      Inapplicability of Common Fund Doctrine and Common Benefit Doctrine**

The common fund and common benefit doctrines are not mechanisms to shift the fee to an opposing party, but rather are mechanisms to spread the fee among

---

[5]Plaintiff argues that the dissemination of the fund does not preclude an award of attorneys fees being assessed against Midwest pursuant to the common fund doctrine. (Pl. Reply Br. Supp. Mot. Atty's Fees at 7). As support for this premise, Plaintiff cites *McIntosh v. McAfee Inc.*, 06-07694 (JW) (N.D. Cal. October 17, 2008). However, *McIntosh* is wholly inapposite, as recovery in that case is based on a California "private attorney general" statute (C.C.P. § 1021.5), not on the common fund doctrine

If plaintiff desired to recover funds under the common fund doctrine, plaintiff should have sought a preliminary injunction to set aside a portion of the distribution. *Savoie v. Merchant's Bank*, 84 F.3d 52, 58 (2d Cir. 1996). Failure to do so may itself be justification for a denial of plaintiff's motion. *Wyser-Pratte v. Van Dorn Co.*, 49 F.3d 213, 218 (6th Cir. 1995) (declining to award attorney's fees to plaintiff pursuant to common fund doctrine, in part because plaintiff had not fully pursued motion for preliminary injunction to set aside portion of defendant's intended distribution).

[6]Indeed, there is a fair amount of disagreement as to whether a case such as this, where the benefit is monetary, yet there is no actual fund under the court's jurisdiction, is a common fund or a common benefit case. *Compare Great Northern Nekoosa Corp.*, 925 F.2d at 522 (describing an increased price per share scenario as a common benefit case) *with In re Dunkin' Donuts Shareholders Litigation*, 1990 WL 189120 (Del. Ch. 1990) (describing the same scenario as a common fund case).

Case 2:07-cv-00345-JPS   Filed 09/15/09   Page 11 of 22   Document 50

the beneficiaries of the litigation. *See* 10 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 54.171[2][a] ("The most important feature of the common fund exception is that the fee movant's recovery must be drawn exclusively from the fund created; neither the litigation opponent nor the fund beneficiaries themselves are personally liable for any of the fees."). In *Wis. Ret. Teachers Ass'n*, the Wisconsin Supreme Court made it clear that imposition of the common fund doctrine should leave "a losing litigant . . . no better or worse off as a result of the doctrine's application." 558 N.W.2d at 99. The importance that the burden of the fee award fall on the beneficiaries, and not defendants, stems from the purpose of the doctrine – to avoid the unjust enrichment of those benefitting from plaintiff's efforts – and is highlighted by the third factor to be considered in determining whether the doctrine should apply, namely: whether the fees are capable of being "shifted with some exactitude to those benefitting." *Alyeska*, 421 U.S. at 265 n. 39 (quoted in *Wis. Ret. Teachers Ass'n*, 558 N.W.2d at 98).

It is true that under the common benefit doctrine attorney's fees are at times assessed against the losing party, such as a corporation or a union; however, this is only done as a method of distributing the costs among the beneficiaries. Thus, if a plaintiff brings suit against a corporation in order to prevent the corporation from engaging in wasteful or illegitimate behavior, and the plaintiff is successful, then ultimately each individual shareholder is an equal beneficiary of the action. Because the shareholders are the alter ego of the corporation, the court can effectively spread

the costs among the beneficiaries – the shareholders – by levying attorney's fees against the corporation. The aforementioned scenario often occurs within the context of a shareholder derivative suit, *see Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); however, this is not such a case. The fact that the instant case is not a derivative suit is not in and of itself fatal to plaintiff's motion though. Rather, it is the lack of identity of interest between Midwest and the beneficiaries that precludes recovery.

In *Hall v. Cole*, 412 U.S. 1 (1973), the Supreme Court granted attorney's fees to a plaintiff that sued his former union, claiming that his expulsion from the union for violation of a union rule violated his right of free speech. The Court found that by vindicating his own free speech rights, plaintiff had conferred a common benefit on the union and all of its members, and was thus entitled to have his attorney's fees paid out of the union coffers. *Id.* at 8-9. The crucial element to note is that the union was not required to pay because it lost, but rather because all of the union members were the beneficiaries, and thus an award against the union was merely a mechanism for spreading the fees amongst all the union members. Without this identity of interest between the defendant and beneficiaries, it would be improper to charge a defendant with plaintiff's attorney's fees, for doing so would fail to shift the costs with the requisite "exactitude to those benefitting." *Alyeska*, 421 U.S. at 265 n. 39.

-13-

The question of whether there is identity of interest between Midwest and the beneficiaries in this case is a thorny question. If one simply defines the class of beneficiaries as "all Midwest shareholders," then there clearly would be identity of interest. However, such a definition would simply fail to be factually correct. In the instant case, all Midwest shareholders were cashed out at a set price. Thus, the benefit of the higher price accrued to all persons owning shares of Midwest stock immediately prior to the consummation of the transaction on January 31, 2008. The present shareholder, TPG, paid the higher price, thus generating the $58 million common benefit that the previous shareholders (i.e. the beneficiaries) received. Of course, in most scenarios it makes no sense to distinguish between the share and the shareholder, or to distinguish between whether or not the shareholder at the time the attorney fee is assessed was a shareholder at the time the benefit was conferred. This is because in most situations the benefit accrues to the organization itself. Thus, in *Mills v. Electric Auto-Lite Co.*, the Court assessed attorney's fees against the company, in favor of the plaintiff who had sued alleging that the proxy statement was misleading in violation of the Securities Exchange Act of 1934. 396 U.S. 375. The Court's rationale was that by ensuring fair and informed corporate suffrage, the plaintiff's action had benefitted the company as a whole, thus each shareholder is proportionately benefitted, *Id.* at 628, even if a given shareholder did not acquire his shares until afterwards – for if the company itself has benefitted, then that benefit travels with each share through future transactions. In the instant case,

-14-

there is no allegation that the company as a whole has benefitted (again, plaintiff's suit, unlike *Mills*, was not a derivative suit), the only alleged benefit is the $58 million increase in share price, which clearly did not travel with the share, but rather was pocketed by the previous shareholders.

Distinguishing between ownership of shares at given moments in time is certainly a practice that historically has no place within most corporate law contexts. However, it is relevant in the instant context, because the corporation is merely the entity through which the individual beneficiary's contribution is effected. *See Alyeska*, 421 U.S at 276 (Marshall, J., dissenting). This point is illustrated in Vice Chancellor Lamb's opinion in *In re First Interstate Bancorp Consol. Shareholder Litigation*, a case, like the instant case, in which shareholder plaintiffs sought attorney's fees by arguing that their suit led to a merger that resulted in a higher per share stock price for all shareholders. 756 A.2d 353, 356 (Del. Ch. 1999). In reaching the conclusion that it was appropriate to award plaintiff's fees out of the corporate coffers, Lamb was careful to point out that there would not be fee shifting, because the acquisition of the company was for stock in the acquiring company, not cash. *Id.* at 360. Thus, the current stockholders in the acquiring company (i.e., the stockholders having to pay the attorney's fees) were, in some substantial degree, former stockholders in the acquired company (i.e., the beneficiaries receiving a higher value for their shares). *Id.* The instant case, however, presents the exact opposite scenario as the transaction was for cash, not stock, thus, there is no

overlap between the current Midwest stockholders (i.e., the stockholders having to pay the attorney's fees) and the former Midwest stockholders (i.e., the beneficiaries receiving a higher value for their shares).

Ultimately, neither party has invited the court's attention to relevant case law regarding this important issue as to whether there is identity of interest between beneficiary former shareholders, and an ongoing corporate entity owned by all new shareholders. However, the court's own research has disclosed three cases that are particularly relevant. The first such case is *O'Neill v. Church's Fried Chicken, Inc.*, 910 F.2d 263 (5th Cir. 1990). The facts of *O'Neill*, for present purposes, are *almost* identical to those in the instant case. O'Neill filed suit in order to compel Church's board to consider a tender offer it had previously refused. *Id.* at 264-65. Her claim was ultimately mooted based upon the board's eventual decision to sell the company to the highest bidder. *Id.* O'Neill, thereafter, sought attorney's fees from Church's, arguing that her efforts had, by increasing the value of Church's stock, conferred a substantial benefit upon Church's and its shareholders. *Id.* at 266. The district court granted attorney's fees to be paid by Church's. *Id.* Church's appealed to the Fifth Circuit, arguing "that the district court was clearly erroneous in finding that [the] increased tender price conferred a substantial benefit on the *corporation* as opposed to the individual shareholders who accepted the offer."[7] *Id.* (emphasis in original).

_____

[7]Clearly, a major distinction between the instant case and *O'Neill* is the issue of causation. However, this issue is irrelevant to the court's present analysis of whether recovery under either the common fund or the common benefit doctrines is even available in the instant scenario.

-16-

Church's "point[ed] out . . . that [] the current owner of the company[] did not receive any benefit from O'Neill's [] action, but "was directly injured by being forced to pay a *higher* price to acquire the stock." *Id.* (emphasis in original). The court of appeals was unpersuaded, and required Church's to pay plaintiff's attorney's fees. *Id.* at 267.

The facts in *O'Neill* are almost identical with those found in the instant case and, owing to a crucial distinction, reaches the opposite conclusion this court reaches. O'Neill's suit was a derivative action. The instant case was not a derivative action. Thus, the following rationale, on which the *O'Neill* court relied in reaching its decision, is not applicable in the instant case:

> The increased price per share in the tender offer was a benefit enjoyed equally by all shareholders, solely in their capacities as such, in proportion to their share of ownership in the corporation. In the context of a tender offer, this benefit of the derivative action may therefore be deemed to have accrued to the corporation; and the corporation accordingly is properly made subject to a claim for attorney's fees by the shareholder whose derivative action on its behalf brings about the benefit.

*Id.* Conversely, in the instant case, because plaintiff's suit was not a derivative action, it was not brought on behalf of Midwest. The fact that the action in *O'Neill* was derivative was the basis on which the *O'Neill* court distinguished it from a similar Second Circuit case, *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206 (2d Cir. 1987). *Christensen* also involved shareholders alleging that their actions led to a higher per share price by facilitating a tender offer that would not have otherwise occurred. *Id.* at 210-11. The Second Circuit Court of Appeals rejected these claims stating that there was no fund out of which to pay the attorney's fees, and that

-17-

assessment of the fee against the acquiring corporation would mean the fee would not "be taxed against *persons* who have derived benefit from appellants' law suit." *Id.* at 211 (emphasis added); *see also Junker v. Crory*, 650 F.2d 1349 (5th Cir. 1981) (accord). The *O'Neill* court, in reaching its ruling that fees could be assessed against the corporate entity, pointed out that *Christensen* and *Junker* were not derivative suits, thus distinguishable.

The importance to the holding in *O'Neill* of the derivative nature of the action is underscored by reference to a later Sixth Circuit case, *Wyser-Pratte v. Van Dorn Co.*, 49 F.3d 213 (6th Cir. 1995). Wyser-Pratte argued that his efforts to compel Van Dorn's board to accept an acquisition offer had created a higher per share value for each of Van Dorn's shareholders at the time of the acquisition. *Id.* at 215-17. Wyser-Pratte cited *O'Neill* for the proposition that "disbursement of the common fund to the shareholders does not preclude a fee award under the common fund doctrine." *Wyser-Pratte*, 49 F.3d at 218. The court disagreed. It pointed out that *O'Neill* was a derivative suit, and Texas law (the applicable law in *O'Neill*) held that "shareholders who pursue a successful derivative suit [are allowed] to recover their attorney's fees from the corporation if they show that they have conferred a substantial benefit to the corporation through their efforts." *Wyser-Pratte*, 49 F.3d at 218. It was the foregoing law, not the common fund doctrine, the *Wyser-Pratte* court explained, which justified the award of attorneys fees against the corporation in *O'Neill*. *Wyser-Pratte*, 49 F.3d at 218. The court thus refused to assess

-18-

attorney's fees against Van Dorn. As the instant case was not a derivative case, the rationale expressed in *Wyser-Pratte* is more applicable than the rationale expressed in *O'Neill*, and further supports the court's determination that neither the common fund nor common benefit doctrine support taxing attorney's fees against Midwest.

Assuredly, the above analysis is vulnerable to criticism. The court is well aware that an acquiring company assumes the liabilities of the company it acquires. Were one not to draw a distinction between the individual shareholders and the corporation (which typically one does not do in a corporate law context), then certainly one would have to hold – if plaintiff could show the requisite causation – that Midwest, regardless of who the shareholders now are, should, under the common benefit doctrine (if that doctrine is valid under Wisconsin law), pay plaintiff's attorney's fees. However, the range of common fund and common benefit cases form a spectrum. At one end of the spectrum is a pure common fund case, in which deducting attorney's fees from the fund is clearly permissible. At the other end of the spectrum is a case in which there is a common benefit, but there is a lack of identity between the beneficiaries and the defendant, thus making deduction of fees from the defendant's coffers nothing more than fee shifting, which is clearly impermissible. At some point a court has to draw a line on that spectrum, and say that anything that falls to one side is permissible, and anything that falls to the other is not. Which side of that line this case falls on results directly from whether or not one distinguishes between the individual shareholders and the corporate entity. Based on the facts,

Case 2:07-cv-00345-JPS   Filed 09/15/09   Page 19 of 22   Document 50

as well as the above case law and analysis, the court holds that it would be inequitable in the instant case not to so distinguish between the beneficiary previous shareholders and the ongoing corporate entity.  Accordingly, plaintiff, even if it could show causation, could not recover under the common fund doctrine or the common benefit doctrine, as allowing plaintiff to do so would constitute fee shifting.

### 2)    Failure to Show Causation

Even if the above analysis is categorically wrong, and the common benefit doctrine does allow for recovery in the instant scenario, plaintiff's motion nonetheless fails, for plaintiff has failed to demonstrate the requisite causation.  As previously stated, the Delaware causation presumption does not apply under Wisconsin law, thus, the onus is on plaintiff to show that its actions caused the benefit to accrue. *See Aon Risk Servs., Inc. v. Liebenstein*, 2006 WI App 4, ¶ 7, 710 N.W.2d 175, ¶ 7 ("Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims."), overruled in part on other grounds by *Burbank Grease Servs., LLC v. Sokolowski,* 2006 WI 103, ¶ 33, 717 N.W.2d 781, ¶ 33. While "[i]t is true that common fund [and common benefit] cases typically hinge on some form of court-ordered relief[,]" the fact that plaintiff's "suit was dismissed for mootness is not in itself dispositive."  *Consolidated Edison Co. of N.Y., Inc. v. Bodman*, 445 F.3d 438, 456-57 (D.C. Cir. 2006).  However, often, though an action is rendered moot, the record will "offer no plausible explanation for the defendant's

-20-

actions other than the lawsuit itself[,]" *id.,* thus allowing the court to find sufficient causation. That is not the case in the instant suit.

Midwest's brief details the many factors that influenced the board's decision to entertain acquisition offers. (Def. Br. Opp. Mot. Atty's Fees at 28). Particularly relevant is the fact that Midwest's board was being advised at all relevant times (including before the instant suit was filed) by experienced mergers and acquisitions counsel from well respected law firms. (Id.) Additionally, four months before plaintiff filed suit, Midwest's board engaged Goldman Sachs to assist in evaluating AirTran's initial offer, and Goldman Sachs continued to advise the board on all subsequent offers. (Id.). Lastly, there were a myriad of events and factors, wholly separate from the lawsuit, that were each undoubtedly far more influential on Midwest's decisions. These include the annual shareholder's meeting at which the shareholders voted in AirTran's directors, thus signaling the shareholders' interest in an acquisition, as well as Midwest's disappointing financial performance, thus increasing the appeal of being acquired. However, perhaps most damning to plaintiff's cause is plaintiff's inability to point to any evidence indicating that the lawsuit had any impact on Midwest whatsoever. Indeed, it would appear plaintiff pinned its hope on the court adopting the Delaware causation presumption, for plaintiff's entire argument is based on the correlation in time between plaintiff's legal maneuverings and Midwest's actions. Correlation does not equal causation and, as previously described, there were numerous other, far more compelling, motivating factors influencing Midwest's

behavior. Thus, plaintiff has failed to satisfy the burden necessary to carry this motion.

## CONCLUSION

Plaintiff seeks attorney's fees from Midwest under the common fund doctrine. However, there is no fund from which to deduct said fees, thus plaintiff cannot succeed. Construing plaintiff's motion as falling under the common benefit doctrine does not change the result, for there is no identity of interest between Midwest and the beneficiaries, thus a fee award against Midwest would constitute fee shifting. The same would also be true for any attempted recovery against Midwest under the common fund doctrine. Independently, plaintiff has simply failed to show that it caused the benefit for which it seeks to recover. For each of these reasons, the court is obliged to deny plaintiff's motion.

Accordingly,

**IT IS ORDERED** that plaintiff's Motion for Attorney's Fees and Litigation Costs and Expenses (Docket #38) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-22-